1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BILLY DRIVER,                              No.  2: 20-cv-1665 TLN KJN P

12                 Plaintiff,

13          v.                                   ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14    KERN COUNTY SUPERIOR COURT, et
      al.,
15
                 Defendants.
16

17

18        I.        Introduction

19        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to

20    42 U.S.C. § 1983.  Pending before the court is defendants' summary judgment motion.  (ECF No

21    215.)

22           Defendants move for summary judgment on the grounds that plaintiff  failed to exhaust

23    administrative remedies and on the merits of plaintiff's claims.  For the reasons discussed herein,

24    the undersigned recommends that defendants' motion for summary judgment be granted on the

25    grounds that plaintiff failed to exhaust administrative remedies as to all claims but for the claim

26    alleging that defendant Rauf ignored his complaints that Invega caused baldness.  For the reasons

27    stated herein, the undersigned recommends that plaintiff's claims alleging that defendant Rauf

28    ignored his complaints that Invega caused baldness and that all defendants ignored his complaints

                                                    1

1   that Invega caused halitosis be dismissed for failing to state potentially colorable claims for relief.

2          For the reasons stated herein, the undersigned also recommends that defendants' motion

3   for summary judgment be granted as to the merits of plaintiff's claims, but for the claim alleging

4   that defendants Rauf and May disregarded plaintiff's complaints that Invega caused plaintiff to

5   suffer chest pain and heart palpitations.  While defendants Rauf and Maya are not entitled to

6   summary judgment as to the merits of plaintiff's claim alleging that they ignored his complaints

7   that Invega caused him to suffer chest pain and heart palpitations, defendants Rauf and Maya are

8   entitled to summary judgment as to this claim based on plaintiff's failure to exhaust

9   administrative remedies.

10       II.    <u>Legal Standards for Summary Judgment</u>

11          Summary judgment is appropriate when it is demonstrated that the standard set forth in

12   Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

13   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

14   judgment as a matter of law."  Fed. R. Civ. P. 56(a).

15                  Under summary judgment practice, the moving party always bears

16   the initial responsibility of informing the district court of the basis
               for its motion, and identifying those portions of "the pleadings,
               depositions, answers to interrogatories, and admissions on file,

17   together with the affidavits, if any," which it believes demonstrate
               the absence of a genuine issue of material fact.

18

19   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

20   56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

21   only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

22   <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

23   387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory

24   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

25   burden of production may rely on a showing that a party who does have the trial burden cannot

26   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

27   should be entered, after adequate time for discovery and upon motion, against a party who fails to

28   make a showing sufficient to establish the existence of an element essential to that party's case,

1    and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

2    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

3    necessarily renders all other facts immaterial."  Id. at 323.

4         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

5    the opposing party to establish that a genuine issue as to any material fact actually exists.  See

6    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

7    establish the existence of such a factual dispute, the opposing party may not rely upon the

8    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

9    form of affidavits, and/or admissible discovery material in support of its contention that such a

10   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

11   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

12   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

15   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

16   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

17   1564, 1575 (9th Cir. 1990).

18        In the endeavor to establish the existence of a factual dispute, the opposing party need not

19   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

20   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

21   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

22   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

23   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

24   amendments).

25        In resolving a summary judgment motion, the court examines the pleadings, depositions,

26   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

27   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

28   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

3

drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

On January 20, 2022 and January 20, 2023 (ECF Nos. 110, 215-3), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III.    Plaintiff's Claims

This action proceeds on plaintiff's amended complaint filed September 28, 2020, against defendants Dr. Bansal, Dr. Rauf and Maya.  (ECF No. 13.)  Plaintiff alleges that defendants violated the Eighth Amendment when they denied plaintiff's request to discontinue his prescription for the anti-psychotic medication, Invega, after plaintiff told defendants that he was not psychotic and that the medication caused plaintiff to suffer harmful side effects, including chest pain, borderline diabetes, heart palpitations, gynecomastia[1], halitosis and baldness.  (Id.) Plaintiff alleges that he notified defendant Banal of the harmful side effects of Invega on May 22, 2020, during a Health Care Grievance interview.  (Id.)

The undersigned finds that plaintiff raises two Eighth Amendment claims.  First, plaintiff alleges that he should not have been prescribed anti-psychotic medication because he is not psychotic.  Second, plaintiff alleges that defendants ignored his complaints about the harmful side

---

[1] Gynecomastia is an increase in the amount of breast gland tissue in boys or men.  See https://www.mayoclinic.org/diseases-conditions/gynecomastia/symptoms-causes/syc-20351793.

4

1    effects of Invega.[2]

2        IV.    <u>Undisputed Facts</u>[3]

3            A.    <u>Undisputed Facts Regarding Administrative Exhaustion</u>

4            1.    Plaintiff was an inmate at both the California Medical Facility ("CMF") and Kern

5                Valley State Prison ("KVSP").  On September 28, 2020, plaintiff filed the first

6                amended complaint alleging that the defendants acted with deliberate indifference

7                to his serious medical needs in violation of the Eighth Amendment when they

8                refused to remove him from the antipsychotic medication Invega.  (ECF. No. 215-

9                2 at 2 (defendants' undisputed fact no. 1); ECF No. 216 at 37 (plaintiff's response

10               to defendants' undisputed fact no. 1).)

11           2.   The Health Care Correspondence and Appeals Branch ("HCCAB") is part of the

12               California Correctional Health Care Services ("CCHCS") that provides oversight

13               of medical, dental, and mental health care appeals/grievances for adult inmates in

14               the California Department of Corrections and Rehabilitation ("CDCR").  (ECF No.

15               215-2 at 2 (defendants' undisputed fact no. 2 citing Gates declaration, ECF No.

16               215-14 at 1).)

17               In response to defendants' undisputed fact no. 2, plaintiff states, "Plaintiff deny!"

18               (ECF No. 216 at 37.)  Plaintiff's general denial of undisputed fact no. 2 is

19               insufficient to create a disputed fact.

20           3.    The healthcare grievance section can now be found at Title 15, 3999.225-

21               3999.237 of the California Code of Regulations.  (ECF No. 215-2 at 2 (defendants'

22               undisputed fact no. 3 citing Gates declaration, ECF No. 215-14 at 2-3).)

23

---

24   [2]   In the amended complaint, plaintiff also claimed that defendant Shute failed to respond to his
25   request for emergency medical care after plaintiff was assaulted in his cell.  The court dismissed
     this claim pursuant to Federal Rule of Civil Procedure 20 as improperly joined.  (ECF Nos. 15,
26   22.)

27   [3]   The undisputed facts are taken from defendants' statement of undisputed facts.  The
     undersigned made slight modifications to reflect relevant evidence referred to in the statement of
28   undisputed facts.

In response to defendants' undisputed fact no. 3, plaintiff states, "Plaintiff deny!"
(ECF No. 216 at 37.)  Plaintiff's general denial of undisputed fact no. 3 is
insufficient to create a disputed fact.

4.  Under these regulations, an inmate may grieve complaints regarding healthcare
policies, decisions, actions, conditions or omissions using a CDCR 602 HC form.
(ECF No. 215-2 at 2 (defendants' undisputed fact no. 4 citing Gates declaration,
ECF No. 215-4 at 2-3).)

In response to defendants' undisputed fact no. 4, plaintiff states, "Plaintiff deny!
HC 602 had no authority."  (ECF No. 216 at 37.)  Based on other exhibits attached
to the complaint, plaintiff appears to claim that he could not challenge the court
order directing involuntary medication, also known as a <u>Keyhea</u> order[4], by way of
a 602 HC grievance.  Plaintiff appears correct that he could not challenge the
<u>Keyhea</u> order per se by way of a 602 HC grievance.

5.   Such complaints are subject to two levels of review, an institutional level of
review, and a headquarters level of review.  (ECF No. 215-2 at 2 (defendants'
undisputed fact no. 5 citing Gates declaration, ECF No. 215-14 at 2-3).)

In response to defendants' undisputed fact no. 5, plaintiff states, "Plaintiff deny!"
(ECF No. 216 at 37.)  Plaintiff's general denial of undisputed fact no. 5 is
insufficient to create a disputed fact.

6.  Healthcare grievances are subject to a headquarters disposition before
administrative remedies are deemed exhausted.  (ECF No. 215-2 at 3 (defendants'
undisputed fact no. 6 citing Gates declaration, ECF No. 215-14 at 2-3).)

In response to defendants' undisputed fact no. 6, plaintiff states, "Plaintiff deny!"
(ECF No. 216 at 38.)  Plaintiff's general denial of undisputed fact no. 6 is

---

[4]  "A <u>Keyhea</u> order permits the long-term involuntary medication of an inmate upon a court finding that the course of involuntary medication is recommended and that the prisoner, as a result of mental disorder, is gravely disabled and incompetent to refuse medication, or is a danger to himself or others." <u>Davis v. Walker</u>, 745 F.3d 1303, 1307 n.2 (9th Cir. 2014), citing <u>Keyhea v. Rushen</u>, 178 Cal.App.3d 526, 541-542 (Cal. App. 1986).

1       insufficient to create a disputed fact.

2       ***Grievance No. CMF HC 20000539***

3       7.   The Health Care Appeals Office received grievance no. CMF HC 20000539 on

4            April 16, 2020.  (ECF No. 215-15 at 37.)  In this grievance, plaintiff requested to

5            be removed from court ordered involuntary medication and awarded $22,000,000

6            for pain and suffering.  (ECF No. 215-2 at 3 (defendants' undisputed fact no. 3

7            citing Gates declaration, ECF No. 215-14 at 3); ECF No. 216 at 38 (plaintiff's

8            response).)

9       8.   On July 3, 2020, the institutional level reviewer determined that no intervention

10           was necessary, as plaintiff was subject to a valid Keyhea order for involuntary

11           medication, and monetary compensation was outside the jurisdiction of the

12           healthcare grievance process.  (ECF No. 215-2 at 3 (defendants' undisputed fact

13           no. 8 citing Gates declaration, ECF No. 215-14 at 3); ECF No. 216 at 38

14           (plaintiff's response).)

15      9.   Although defendant Bansal interviewed plaintiff in connection with this grievance,

16           it did not name any of the defendants.  (ECF No. 215-2 at 3 (defendants'

17           undisputed fact no. 9 citing Gates declaration, ECF No. 215-14 at 3, and Bansal

18           declaration, ECF No. 215-6 at 2).)

19           In response to undisputed fact no. 9, plaintiff states, "Plaintiff deny!"  (ECF No.

20           216 at 38.)  However, the copy of grievance CMF HC 20000539 attached to

21           defendants' summary judgment motion reflects that plaintiff did not name

22           defendants in this grievance.  (ECF No. 215-15 at 37-38.)  The Institutional Level

23           response reflects that defendant Bansal interviewed plaintiff regarding this

24           grievance.  (Id. at 40.)

25      10.  Grievance no. CMF HC 20000539 did not reach the headquarters' level of review.

26           (ECF No. 215-2 at 3 (defendants' undisputed fact no. 10 citing Gates declaration,

27           ECF No. 215-14 at 3).)

28           In response to undisputed fact no. 10, plaintiff states, "Plaintiff deny!"  (ECF No.

216 at 38.)  However, the copy grievance no. CMF HC 20000539 attached to defendants' summary judgment motion reflects that plaintiff did not appeal this grievance to headquarters' level of review.  (ECF No. 215-15 at 37-38.)  Therefore, to the extent plaintiff claims that he appealed this grievance to the headquarters' level of review, this claim is not supported by the evidence.

***Grievance No. KVSP HC 20000542***

11.  The Health Care Grievance Office received grievance no. KVSP HC 20000542 on July 20, 2020.  (ECF No. 215-15 at 43.)  In this grievance, plaintiff alleged a failure to process a healthcare services request, baldness from highly toxic psychotropic medication, a denial of laundry bags, a December 6, 2010 parole date, hunger and safety concerns.  (ECF No. 215-2 at 3 (defendants' undisputed fact no. 11 citing Gates declaration, ECF No. 215-4 at 3-4); ECF No. 216 at 38 (plaintiff's response to undisputed fact no. 11).)

12. On September 21, 2020, the institutional-level reviewer determined intervention was necessary.  (ECF No. 215-2 at 3 (defendants' undisputed fact no. 12 citing Gates declaration, ECF No. 215-14 at 3-4); ECF No. 216 at 38 (plaintiff's response).)

The undersigned clarifies the intervention the institutional-level reviewer discussed in their response.  "The reviewer noted that Driver's claims about his release date, hunger, safety concerns and denial of laundry bags were not within CCHCS's jurisdiction." (ECF No. 215-14 at 4 (Gates declaration); ECF No. 215-15 at 49 (reviewer response).)  "The reviewer further stated that although Driver could refuse most health care, he was not entitled to select a provider, and his medical records indicated there were no refusals to see his provider." (ECF No. 215-14 at 4 (Gates declaration); ECF No. 215-15 at 49 (reviewer response).)  The response also stated that plaintiff's health record indicated that he was evaluated by defendant Rauf, Psychiatrist, on August 23, 2020, to discuss side effects of psych meds.  (ECF No. 215-15 at 49 (reviewer response).)  During this

examination, plaintiff mentioned concerns of weight gain, increased lipids and increased diabetes risk.  (Id.)  There is no indication that plaintiff brought up concerns of being bald due to psychotropic medication during this examination.  (Id.)  After discussion with defendant Rauf, plaintiff agreed to continue on psychotropic medication and have his blood draw completed again.  (Id.)  The reviewer wrote, "Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider."  (Id.)

13.  This grievance did not name any of the defendants.  (ECF No. 215-2 at 3 (defendants' undisputed fact no. 13, citing Gates declaration, ECF No. 215-14 at 4).)

In response to undisputed fact no. 13, plaintiff states, "Plaintiff deny!"  (ECF No. 216 at 38.)  The copy of grievance KVSP HC 20000542 attached to defendants' summary judgment motion does not name any defendants.  (ECF No. 215-15 at 43-46.)  However, as discussed above, the institutional level response reflects that the institutional reviewer reviewed records from defendant Rauf's August 23, 2020 examination of plaintiff.

14.  Dissatisfied with the institutional level response to KVSP HC 20000542, plaintiff proceeded to the headquarters' level of review on September 24, 2020.  (ECF No. 215-2 at 3-4 (defendants' undisputed fact no. 14 citing Gates declaration, ECF No. 215-14 at 4); ECF No. 216 at 38-39 (plaintiff's response).)

15.  HCCAB upheld the institutional level decision on January 27, 2021, declining intervention.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 15, citing Gates declaration, ECF No. 215-14 at 4).)

In response to undisputed fact no. 15, plaintiff states, "I don't know."  (ECF No. 216 at 39.)  The copy of the headquarter' level response attached to defendants' summary judgment motion reflects that the HCCAB response decision declining intervention was reviewed and signed on January 27, 2021.  (ECF No. 215-15 at

54.)

*Grievance No. KVSP HC 20000543*

16.  The Health Care Appeals Office received grievance no. KVSP 200000543 on July 20, 2020.  (ECF No. 215-15 at 56.)  In this grievance, plaintiff requested removal from psychiatric drugs because they were causing various side effects.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 16 citing Gates declaration, ECF No. 215-14 at 4); ECF No. 216 at 39 (plaintiff's response).)  The undersigned observes that in this grievance, plaintiff described the side effects he suffered as erectile dysfunction, baldness, gynecomastia, heart disease, weight gain, hunger, bad breath, body odor, tooth pain, shortness of breath, etc.  (ECF No. 215-15 at 56.)

17.  No defendants were named in this grievance.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 17 citing Gates declaration, ECF No. 215-14 at 4).)

In response to defendants' undisputed fact no. 17, plaintiff states, "Plaintiff deny!" (ECF No. 216 at 39.)  However, a copy of grievance KVSP HC 20000543 attached to defendants' summary judgment motion reflects that no defendants were named in this grievance.  (ECF No. 215-15 at 56.)

18.  On July 24, 2020, the institutional level reviewer rejected the grievance because the Institutional Grievance Office had received and processed grievance KVSP HC 20000542 on July 20, 2020, and plaintiff was entitled to submit one healthcare grievance every 14 days.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 18 citing Gates declaration, ECF No. 215-14 at 4-5).)  The Institutional Response cites California Code of Regulations, Title 15, Section 3999.226(c) which states, "The grievant has the right to submit one health care grievance every 14 calendar days, unless it is accepted as an expedited grievance.  The 14 calendar day period shall commence on the calendar day following the grievant's last accepted health care grievance."  (ECF No. 215-15 at 58.)  The response also states, "Explain the reason you believe your submission does not fall within the parameters of the excessive filings criteria in regard to the last accepted health care grievance

10

referenced below.  Take the necessary corrective action provided in this notice, and resubmit the health care grievance to the Health Care Grievance Office where you are housed within 30 calendar days."  (Id.)

In response to undisputed fact no. 18, plaintiff states, "Plaintiff deny!  See new # 602 2020."  (ECF No. 216 at 39.)  Plaintiff does not identify the new 602 referred to in his response to undisputed fact no. 18.  For this reason, the undersigned finds that plaintiff fails to demonstrate that undisputed fact no. 18 is disputed.

19.  Plaintiff was permitted to resubmit healthcare grievance no. KVSP 20000543 on or after August 3, 2020, but there is no indication that he did so.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 19 citing Gates declaration, ECF No. 215-14 at 5).)

In response to undisputed fact no. 19, plaintiff states, "Plaintiff deny!  See new # 602 2020."  (ECF No. 216 at 39.)  Plaintiff does not identify the new 602 referred to in his response to undisputed fact no. 19.  For this reason, the undersigned finds that plaintiff fails to demonstrate that undisputed fact no. 19 is disputed.

20.  This grievance did not reach the headquarters' level of review.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 29 citing Gates declaration, ECF No. 215-14 at 5).)

In response to undisputed fact no. 20, plaintiff states that he does not know if this grievance reached the headquarters' level of review.  (ECF No. 216 at 39.)  The record contains no evidence that plaintiff resubmitted this grievance to the institutional level of review or otherwise appealed this grievance to the headquarters level of review.

***KVSP HC 20000552***

21.  The Health Care Appeals Office received grievance no. KVSP HC 20000552 on July 21, 2020.  (ECF No. 215-15 at 60.)  In this grievance, plaintiff requested removal from Invega by defendant Maya and claimed various side effects.  (ECF No. 215-2 at 4 (defendants' undisputed fact no. 21 citing Gates declaration, ECF

11

No. 215-14 at 5; ECF No. 215-15 at 60, grievance); ECF No. 216 at 39 (plaintiff's response).)

22. On July 24, 2020, the institutional-level reviewer rejected the grievance because the institutional grievance office had received and processed healthcare grievance no. KVSP HC 20000542 on July 20, 2020, and plaintiff was entitled to submit one healthcare grievance every 14 days. (ECF No.215-2 at 4 (defendants' undisputed fact no. 22 citing Gates declaration, ECF No. 215-14 at 5; Institutional Level Rejection Notice, ECF No. 215-15 at 62).)

In response to undisputed fact no. 22, plaintiff states, "Plaintiff deny! See new # 602 2020." (ECF No. 216 at 39.) However, plaintiff does not identify this new grievance by number. Accordingly, the undersigned finds that plaintiff fails to demonstrate that defendants' undisputed fact no. 22 is disputed.

23. Plaintiff was permitted to resubmit grievance no. KVSP HC 20000552 by August 3, 2020, but there is no indication that he did so. (ECF No. 215-2 at 4 (defendants' undisputed fact no. 23 citing Gates declaration, ECF No. 215-14 at 5).)

In response to undisputed fact no. 23, plaintiff states, "Plaintiff deny! See 2602 rules!" (ECF No. 216 at 40.) Plaintiff does not identify the rules to which he refers. Accordingly, the undersigned finds that plaintiff fails to demonstrate that defendants' undisputed fact no. 23 is disputed.

### *KVSP HC 20000551*

24. The Health Care Appeals Office received grievance no. KVSP HC 20000551 on July 21, 2020. (ECF No. 215-15 at 64.) In this grievance, plaintiff cited an inability to work with his clinician, Dr. Jones, and alleged forced medication due to a false rules violation report; this grievance did not name any defendants. (ECF No. 215-2 at 5 (defendants' undisputed fact no. 24 citing Gates declaration, 215-14 at 5; grievance no. KVSP HC 20000551, ECF No. 215-15 at 64).)

In response to undisputed fact no. 24, plaintiff states, "Plaintiff deny. See HC 602." (ECF No. 216 at 40.) Plaintiff does not cite the grievance to which he refers

1    in his response.  Accordingly, the undersigned finds that plaintiff failed to

2    demonstrate that undisputed fact no. 24 is disputed.

3    25.  On July 24, 2020, the institutional-level reviewer rejected the grievance because it

4    was duplicative of healthcare grievance tracking number KVSP HC 20000542, for

5    which a decision was rendered or pending.  (ECF No. 215-2 at 5 (defendants'

6    undisputed fact no. 25 citing Gates declaration, ECF No. 215-14 at 5; Institutional

7    Rejection Notice, ECF No. 215-15 at 66).)

8    The undersigned observes that the Institutional Rejection Notice states, in relevant

9    part, "Your issue regarding your licensed clinical social worker will not be

10   addressed herein as this is a duplicate issue to that in health care grievance

11   tracking number KVSP HC 20000542, for which a decision was rendered or is

12   pending.  Per California Code of Regulations, Title 15, Section 3999.234(a)(6), a

13   health care grievance which duplicates a health care grievance upon which a

14   decision has been rendered or is pending is subject to rejection."  (ECF No. 215-15

15   at 66.)  In KVSP HC 20000542, plaintiff also complained about the treatment

16   provided by licensed clinical social worker Jones and requested to be taken off his

17   caseload.   (Id. at 43-46.)

18   In response to undisputed fact no. 25, plaintiff states, "Plaintiff deny!  Which

19   602?"  ECF No. 216 at 40.  The undersigned clarifies that the institutional level

20   reviewer cancelled KVSP HC 20000551 because it was duplicative of KVSP HC

21   20000542.

22   26.  Plaintiff was allowed to provide any new information that would warrant further

23   review and to establish that the grievance was not duplicative and to resubmit the

24   grievance within 30 days.  (ECF No. 215-2 at 5 (defendants' undisputed fact no.

25   26 citing Gates declaration, ECF No. 215-14 at 5; Institutional Level Rejection

26   Notice, ECF No. 215-15 at 66).)

27   In response to undisputed fact no. 26, plaintiff states, "Plaintiff deny!  Which

28   602?"  ECF No. 216 at 40.  The undersigned clarifies that the institutional level

reviewer cancelled KVSP HC 20000551 because it was duplicative of KVSP HC 20000542.

27. There is no indication that Driver corrected this defect.  (ECF No. 215-2 at 5 (defendants' undisputed fact no. 27 citing Gates declaration, ECF No. 215-14 at 5).)

In response to undisputed fact no. 27, plaintiff states, "Plaintiff deny.  See 2602 rules."  (ECF No. 216 at 40.)  Plaintiff does not cite the 2602 rules to which he refers.   Accordingly, the undersigned finds that plaintiff has not demonstrated that defendants' undisputed fact no. 27 is disputed.

28. This grievance did not reach headquarters' level of review.  (ECF No. 215-2 at 5 (defendants' undisputed fact no. 28 citing Gates declaration, ECF No. 215-14 at 5).)

In response to undisputed fact no. 28 plaintiff states, "Plaintiff does not know." (ECF No. 216 at 40.)  Defendants' exhibits reflect that this grievance did not reach headquarters' level of review.  (ECF No. 215-15 at 64.)

***KVSP HC 20000683***

29.  On August 24, 2020, the Health Care Appeals Office received grievance no. KVSP HC 20000683.  (ECF No. 215-15 at 68.)  In this grievance, plaintiff claimed that he asked defendant Rauf to remove him from Invega due to weight gain and heart palpitations.  (ECF No. 215-2 at 5 (defendants' undisputed fact no. 28 citing Gates declaration, ECF No. 215-14 at 6); ECF No. 216 at 40 (plaintiff's response).)

30.  Plaintiff did not name defendants Bansal or Maya in this grievance.  (ECF No. 215-2 at 5 (defendants' undisputed fact no. 30 at 5, citing Gates declaration, ECF No. 215-14 at 6; grievance KVSP HC 20000683, ECF No. 215-15 at 68).)

In response to undisputed fact no. 30, plaintiff states, "Plaintiff deny.  See 2602 rules."  (ECF No. 216 at 40.)  Plaintiff does not cite the 2602 rules to which he refers.  After reviewing grievance KVSP HC 20000683, the undersigned finds that

14

this grievance did not name defendants Bansal or Maya.  Accordingly, defendants'
undisputed fact no. 30 is undisputed.

31.  On August 31, 2022, the institutional-level reviewer rejected this grievance as an
excessive filing because the Health Care Grievance Office received and processed
grievance no. KVSP HC 20000676[5] on August 24, 2020.  (ECF No. 215-2 at 5
(defendants' undisputed fact no. 31, citing Gates declaration, ECF No. 215-14 at 6;
Institutional Rejection Notice, ECF No. 215-15 at 70); ECF No. 216 at 40
(plaintiff's response).)

32.  Plaintiff was permitted to resubmit this grievance by September 8, 2020 for
further processing.  (ECF No. 215-2 at 5 (defendants' undisputed fact no. 32 citing
Gates declaration, ECF No. 215-14 at 6; Institutional Rejection Notice, ECF No.
215-15 at 70).)

In response to undisputed fact no. 32, plaintiff states, "Plaintiff deny!  See 2602
rules."  (ECF No. 216 at 41.)  Plaintiff does not cite the 2602 rules to which he
refers.  Accordingly, the undersigned finds that defendants' undisputed fact no. 32
is undisputed.

33.  There is no indication that plaintiff did so, and this grievance did not reach the
headquarters' level of review.  (ECF No. 215-2 at 6 (defendants' undisputed fact
no. 33 citing Gates declaration, ECF No. 215-14 at 6).)

In response to undisputed fact no. 33, plaintiff states, "Plaintiff deny!  See 2602
rules."  (ECF No. 216 at 41.)  Plaintiff does not cite the 2602 rules to which he
refers.  Accordingly, the undersigned finds that defendants' undisputed fact no. 33
is undisputed.

B.  Undisputed Facts Regarding Plaintiff's Treatment

34.  Defendant Bansal, who was based at the California Medical Facility ("CMF"),

---

[5]   Grievance no. KVSP HC 20000676 raised three issued :  1) Grievances/Grievance Status—
Emergency; 2) Mental Health/Psychiatric Evaluation—you are feeling sad and depressed due to
the abrupt death of Wagoner and you need help; and 3) Non-Medical/Custody/Medical Parole—
immediate medical release from prison.  (ECF No. 215-15 at 10.)

was never assigned as plaintiff's treating psychiatrist.  (ECF No. 215-2 at 6 (defendants' undisputed fact no. 34 citing Bansal declaration, ECF No. 215-6 at 2).)

In response to undisputed fact no. 34, plaintiff states, "Plaintiff deny!  See HC 602."  (ECF No. 216 at 41.)  Plaintiff does not identify the HC 602 to which he refers.  Accordingly, the undersigned finds that defendants' undisputed fact no. 34 is undisputed.

35.  Instead, defendant Bansal's interaction with plaintiff was limited to interviewing plaintiff in connection with healthcare grievance no. CMF HC 20000539 on May 22, 2020.  (ECF No. 215-2 at 6 (defendants' undisputed fact no. 35 citing Bansal declaration, ECF No. 216-6 at 2).)

In response to undisputed fact no. 35, plaintiff states, "Plaintiff deny!  See HC 602."  (ECF No. 216 at 41.)  Plaintiff does not identify the HC 602 to which he refers.  Accordingly, the undersigned finds that defendant's undisputed fact no. 35 is undisputed.

36.  On February 28, 2019, a <u>Keyhea</u> order was issued by the Office of Administrative Hearings while plaintiff was housed at the California Health Care Facility ("CHCF") in Stockton, directing the involuntary administration of psychiatric medication under California Penal Code section 2602, because plaintiff posed a danger to others.  (ECF No. 215-2 at 6 (defendants' undisputed fact no. 36 citing Rauf declaration, ECF No. 215-7 at 2; February 28, 2019 <u>Keyhea</u> order, ECF No. 215-5 at 17-19[6]).)

In response to undisputed fact no. 36, plaintiff states, "Plaintiff deny!  See Jan. 9th 2019 2602 denial."  (ECF No. 216 at 41.)  Attached to plaintiff's opposition is an order by the Office of Administrative Hearings dated January 9, 2019.[7]  (<u>Id.</u> at 27-

_____

[6]  The undersigned takes judicial notice of this <u>Keyhea</u> order.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of public records).

[7]  The undersigned takes judicial notice of this January 9, 2019 order by the Office of

29.) This order states that the request for a petition for an order authorizing an involuntary administration of psychiatric medication petition regarding plaintiff is denied "solely on basis of petitioner's inability to proceed because IP moved to Stockton." (Id. at 28.) The order states that there was no finding on the merits of the petition. (Id.) Therefore, it appears that the January 9, 2019 hearing was continued to February 28, 2019, when the Office of Administrative Hearings granted the petition authorizing the involuntary administration of psychiatric medication. Accordingly, the undersigned finds that plaintiff has not shown that defendants' undisputed fact no. 36 is disputed.

37. On January 29, 2020, defendant Rauf determined that plaintiff continued to pose a danger to others due to his schizoaffective disorder and that the order expiring on February 28, 2020, needed to be renewed. (ECF No. 215-2 at 6 (defendants' undisputed fact no. 37 citing Rauf declaration, ECF No. 215-7 at 2).)

In response to undisputed fact no. 37 plaintiff states, "Plaintiff admit. See injection stopped Feb. 4, 2020 2602." (ECF No. 216 at 41.) The undersigned observes that defendants submitted an order by the Office of Administrative Hearings continuing the hearing regarding the petition for an order authorizing involuntary administration of psychiatric medication from February 4, 2020, to April 7, 2020.[8] (ECF No. 215-5 at 21-23.) This order does not demonstrate that defendants' undisputed fact no. 37 is disputed.

38. Specifically, it was defendant Rauf's professional opinion that because plaintiff had a history of aggressive behavior, frequent fights, crisis bed admissions, and suicidal ideation attempts, he would revert to such conduct without involuntary psychiatric medication, specifically, Invega. (ECF No. 215-2 at 6 (defendants' undisputed fact no. 38, citing Rauf declaration, ECF No. 215-7 at 2).)

Administrative Hearings. Lee, 250 F.3d at 689.

[8] The undersigned takes judicial notice of this order continuing the Keyhea hearing. Lee, 250 F.3d at 689.

17

In response to undisputed fact no. 38, plaintiff states, "Plaintiff deny!  It was Dr.
Rauf personal opinion."  (ECF No. 216 at 41.)  To the extent plaintiff challenges
defendant Rauf's qualifications to offer his opinion in support of the January 2020
petition for involuntary medication, the undersigned observes that plaintiff does
not deny his own behavior history described by defendant Rauf in defendant
Rauf's declaration.  In his declaration, defendant Rauf states that he has been a
psychiatrist with CDCR since January 2, 2018.  (ECF No. 215-7 at 1.)  Defendant
Rauf describes his relevant education.  (Id.)  Based on this undisputed evidence,
the undersigned finds that plaintiff's challenge to defendant Rauf's qualifications
to offer an opinion regarding plaintiff's need for psychiatric medication are
without merit.

39.  Defendant Rauf believed that without such medication, plaintiff would cease
taking them and would experience a relapse in paranoia and aggressive and
threatening behaviors.  (ECF No. 215-2 at 6 (defendants' undisputed fact no. 39
citing Rauf declaration, ECF No. 215-7 at 2).)

In response to defendants' undisputed fact no. 39 plaintiff states, "Plaintiff deny!
Don't know."  (ECF No. 216 at 41.)  The undersigned finds that these allegations
do not demonstrate that defendants' undisputed fact no. 39 is disputed.

40.  Therefore, defendant Rauf submitted a petition to renew the February 28, 2019
Keyhea order for another year.  (ECF No. 215-2 at 6 (defendants' undisputed fact
no. 40 citing Rauf declaration, ECF No. 215-7 at 2); ECF No. 216 at 41 (plaintiff's
response).)

41.  After a hearing and the presentation of evidence, the petition was granted and was
scheduled to expire on April 7, 2021.  (ECF No. 215-2 at 7 (defendants'
undisputed fact no. 41 citing Rauf declaration, ECF No. 215-7 at 2).)

In response to undisputed fact no. 41, plaintiff states, "Plaintiff deny!  See Feb. 4.
2020."  (ECF No. 216 at 42.)  Plaintiff appears to refer to the February 4, 2020
order by the Office of Administrative Hearings continuing the hearing regarding

18

the petition for involuntary administration of psychiatric medication from February 4, 2020 to April 7, 2020.  (ECF No. 215-5 at 21-23.)  This order does not demonstrate that defendants' undisputed fact no. 41 is disputed.

42.  Plaintiff filed a habeas petition challenging the April 7, 2020 Keyhea order on June 29, 2020, and the court denied that petition on July 9, 2020.  (ECF No. 215-2 at 7 (defendants' undisputed fact no. 42, citing plaintiff's petition and order denying petition (ECF No. 215-5 at 34-40); ECF No. 216 at 42 (plaintiff's response).)  In this petition, plaintiff alleged that he suffered harmful side effects from Invega.[9]  (ECF No. 215-5 at 34-36.)

43.  Between May and August 2020, plaintiff was given Invega.  (ECF No. 215-2 at 7 (defendants' undisputed fact no. 43 citing Lindgren declaration, ECF No. 215-11 at 3); ECF No. 216 at 42 (plaintiff's response).)

The undersigned clarifies that in his declaration, defendants' expert Dr. Lindgren states that plaintiff began a low dose of Invega in early April 2020.  (EC No. 215-11 at 4.)  In his declaration, Dr. Lindgren refers to Invega as paliperidone.  (See id. at 3.)

44.  Defendant Nurse Maya first saw plaintiff for an initial mental health assessment on June 25, 2020.  (ECF No. 215-2 at 7 (defendants' undisputed fact no. 44 citing Maya declaration, ECF No. 215-9 at 2).)

In response to defendants' undisputed fact no. 44, plaintiff states, "Plaintiff deny!"  (ECF No. 216 at 42.)  The undersigned finds that plaintiff's conclusory and unsupported denial of defendants' undisputed fact no. 44 does not demonstrate that this fact is disputed.

45.  At that time, plaintiff said he wanted to be removed from Invega, claiming that he was experiencing erectile dysfunction.  (ECF No. 215-2 at 7 (defendants' undisputed fact no. 45 citing Maya declaration, ECF No. 215-9 at 2; records from

---

[9]  The undersigned takes judicial notice of plaintiff's habeas corpus petition challenging the April 7, 2020 Keyhea order.  Lee, 250 F.3d at 689.

1  June 25, 2020 examination, ECF No. 215-10 at 2-6).)

2  In response to defendants' undisputed fact no. 45, plaintiff states, "Plaintiff deny!

3  I was also having chest pain, etc." (ECF No. 216 at 42.)  In a verified declaration

4  submitted in support of the opposition, plaintiff states that from November 2019 to

5  August 2020 he continued to request that defendant Maya discontinue all anti-

6  psychotic drugs because they were causing chest pains and gynecomastia.  (Id. at

7  13.)  Based on this declaration, the undersigned finds that whether plaintiff

8  informed defendant May on June 25, 2020, that he suffered additional side effects

9  from taking Invega, including chest pain and gynecomastia, is disputed.

10  46.  Defendant Maya noted in the record that certain other antipsychotic medications

11  were not an option because plaintiff had reported side effects to all of them.  (ECF

12  No. 215-2 at 7 (defendants' undisputed fact no. 46 citing Maya declaration, ECF

13  No. 215-9 at 2; records from June 25, 2020 examination, ECF No. 215-10 at 2-6).)

14  In response to undisputed fact no. 46, plaintiff states, "Plaintiff deny.  I am not

15  psychotic." (ECF No. 216 at 42.)  Defendants presented expert evidence,

16  including the declarations of defendant Rauf and Dr. Lindgren (ECF Nos. 215-7

17  and 215-11), demonstrating that plaintiff suffers from serious mental illness.

18  Defendant Rauf states that plaintiff suffers from schizoaffective disorder.  (ECF

19  No. 215-7 at 2.)  Dr. Lindgren describes plaintiff as suffering from "dangerously

20  psychotic symptoms." (ECF No. 215-11 at 5.)  This expert evidence refutes

21  plaintiff's claim that he did not suffer from serious mental illness, which could be

22  characterized as including psychotic symptoms, during the relevant time period.

23  47.  Plaintiff's lab results were generally normal, though his prolactin levels were

24  slightly elevated.[10]  (ECF No. 215-2 at 7 (defendants' undisputed fact no. 47 citing

---

25  [10]  "Prolactin is a hormone produced by the pituitary gland. High levels can affect sexual and

26  reproductive health. They may result from medication use, health conditions, or prolactinomas, benign tumors of the pituitary gland."  https://www.medicalnewstoday.com/articles/what-are-the-

27  side-effects-of-high-prolactin-levels.  The undersigned gleans from defendants' exhibits that Invega could raise prolactin levels which could in turn cause gynecomastia.  See ECF No. 215-2

28  at 7 (plaintiff's medical record from April 29, 2020 where plaintiff complained of gynecomastia

1  Maya declaration, ECF No. 215-9 at 2; records from June 25, 2020 examination,

2  ECF No. 215-10 at 2-6).)

3  In response to defendants' undisputed fact no. 47, plaintiff states, "Don't know."

4  (ECF No. 216 at 42.)  Plaintiff's lack of knowledge regarding the facts alleged in

5  undisputed fact no. 47 do not render this fact disputed.

6  48.  Defendant Maya saw plaintiff a second time on July 14, 2020.  (ECF No. 215-2 at

7  7 (defendants' undisputed fact no. 48, citing Maya declaration, ECF No. 215-9 at

8  2; records from July 14, 2020 examination, ECF No. 215-10 at 8-9); ECF No. 216

9  at 42 (plaintiff's response).)

10  49. In her notes from her July 14, 2020 examination of plaintiff, defendant Maya noted

11  that plaintiff displayed an extensive history of reporting side effects to

12  antipsychotic medications, and his requests appeared to be fueled by ongoing

13  delusional thoughts.  (ECF 215-2 at 7 (defendants' undisputed fact no. 49, citing

14  Maya declaration, ECF No. 215-9 at 2; records from July 14, 2020 examination,

15  ECF No. 215-10 at 8-9).)

16  In response to defendants' undisputed fact no. 49, plaintiff wrote, "Plaintiff deny!

17  Maya told me something different."  (ECF No. 216 at 42.)  Plaintiff does not state

18  what defendant Maya allegedly told him.  Accordingly, the undersigned finds that

19  plaintiff has not demonstrated that undisputed fact no. 49 is disputed.

20  50. Nurse Maya determined that plaintiff would continue with Invega in accordance

21  with the involuntary medication order.  (ECF No. 215-2 at 7 (defendants'

22  undisputed fact no. 50, citing Maya declaration, ECF No. 215-9 at 2; records from

23  July 14, 2020 examination, ECF No. 215-10 at 8-9).)

24  In response to undisputed fact no. 50, plaintiff writes, "Plaintiff deny!  Maya said

25  she would see what she could do."  (ECF No. 216 at 42.)  The undersigned

26  observes that in her notes from the July 14, 2020 examination, defendant Maya

27

28  but his prolactin levels had been monitored and showed that they had declined and he was
    evaluated last week for side effects which he did not display).

21

wrote under the section titled "Plan," that she would "Continue Invega PO for
delusion thoughts.  Will discuss with tx team and PC."  (ECF No. 215-10 at 9.)
These notes reflect that defendant Maya determined that plaintiff would continue
with Invega.  These notes also suggest that defendant Maya may have planned to
discuss plaintiff's use of Invega with his treatment team and primary care
physician.

51.  Defendant Rauf saw plaintiff on August 11, 2020, and noted that plaintiff was
concerned about weight gain, increased lipids and increased risk of diabetes from
psychiatric medication.  (ECF No. 215-2 at 7 (defendants' undisputed fact no. 51
citing Rauf declaration, ECF No. 215-7 at 2; records from August 11, 2020
examination, ECF No. 215-8 at 2-4).)

In response to undisputed fact no. 51, plaintiff writes, "Plaintiff deny!  Dr. saw me
in 2019 and 2020."  (ECF No. 216 at 42.)  In undisputed fact no. 51, defendants do
not claim that defendant Rauf saw plaintiff only on August 11, 2020.

Accordingly, the undersigned finds that plaintiff has not demonstrated that
undisputed fact no. 51 is disputed.

52.  Defendant Rauf reviewed plaintiff's recent laboratory tests, and noted that his
lipid and hemoglobin levels (which is used to test for diabetes) were within normal
limits.  (ECF No. 215-2 at 7-8 (defendants' undisputed fact no. 52, citing Rauf
declaration, ECF No. 215-7 at 2; records from August 11, 2020 examination, ECF
No. 215-8 at 2-4).)

In response to undisputed fact no. 52, plaintiff wrote, "Don't know."  (ECF No.
216 at 43.)  Plaintiff's lack of knowledge regarding the facts alleged in undisputed
fact no. 52 does not render this fact disputed.

53.  Defendant Rauf ordered more blood tests.  (ECF No. 215-2 at 8 (defendants'
undisputed fact no. 53 citing Rauf declaration, ECF No. 215-7 at 3; records from
August 11, 2020 examination, ECF No. 215-8 at 2-4).)

In response to undisputed fact no. 53, plaintiff wrote, "Don't know."  (ECF No.

216 at 43.)  Plaintiff's lack of knowledge regarding the facts alleged in undisputed fact no. 53 does not render this fact disputed.

54.  Defendant Rauf saw plaintiff again on August 23, 2020.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 54 citing Rauf declaration, ECF No. 215-7 at 3; records from August 23, 2020 examination, ECF No. 215-8 at 7-10).)

In response to undisputed fact no. 52, plaintiff writes, "Plaintiff deny! 2019/2020."  (ECF No. 216 at 43.)  Plaintiff appears to claim that defendant Rauf saw him on dates other than August 23, 2020.  In undisputed fact no. 54, defendants do not claim that defendant Rauf saw plaintiff only on August 23, 2020.  Accordingly, the undersigned finds that plaintiff has not demonstrated that the facts alleged in defendants' undisputed fact no. 54 are disputed.

55.  Plaintiff stated he wanted to be removed from his psychiatric medications and claimed to be gaining weight, experiencing difficulty sleeping and having an increased appetite.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 55 citing Rauf declaration, ECF No. 215-7 at 3; records from August 23, 2020 examination, ECF No. 215-8 at 7-10).)

In response to defendants' undisputed fact no. 55, plaintiff writes, "Plaintiff deny! See HC602s."  (ECF No. 216 at 43.)  Plaintiff does not identify the HC 602s to which he refers.  Accordingly, the undersigned finds that plaintiff fails to demonstrate that defendants' undisputed fact no. 55 is disputed.

56.  Defendant Rauf reviewed plaintiff's recent laboratory tests and noted that his lipid and hemoglobin levels were within normal limits.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 56 citing Rauf declaration, ECF No. 215-7 at 3; records from August 23, 2020 examination, ECF No. 215-8 at 7-10).)

In response to undisputed fact no. 56, plaintiff wrote, "Don't know."  (ECF No. 216 at 43.)  Plaintiff's lack of knowledge regarding the facts alleged in undisputed fact no. 56 does not render this fact disputed.

57.  Defendants' undisputed fact no. 57 contains the opinion of defendants' expert, Dr.

23

Lindgren, regarding the administration of Invega to plaintiff from May through August 2020.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 57 citing Lindgren declaration, ECF No. 215-11).)  The undersigned discusses Dr. Lindgren's opinion herein.

58.  Plaintiff had complained of gynecomastia being caused by Invega on April 29, 2020.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 58 citing Lindgren declaration, ECF No. 215-11 at 4; ECF No. 215-12 at 7 (plaintiff's medical record from April 29, 2020, reflecting that he complained of gynecomastia); ECF No. 216 at 43 (plaintiff's response)).

59.  Plaintiff began low-dose Invega in early April 2020.  Gynecomastia being caused by Invega and developing as a result of Invega in less than four weeks, i.e, on April 29, 2020, would be a medical impossibility, given that gynecomastia is a physical condition that develops over many months or sometimes years.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 59, citing Lindgren declaration, ECF No. 215-11 at 4).)

In response to defendants' undisputed fact no. 59, plaintiff states, "Plaintiff deny! See May 2019 medication orders."  (ECF No. 216 at 43.)  Attached to plaintiff's opposition is a document titled "Order Sheet" dated May 30, 2019.  (Id. at 77.)  This document reflects that plaintiff was prescribed chlorpromazine.  (Id.)  This document contains no information regarding Invega and gynecomastia.  Accordingly, the undersigned finds that plaintiff has not demonstrated that defendants' undisputed fact no. 59 is disputed.

60.  Plaintiff also claims that Invega caused diabetes.  (ECF No. 215-2 at 8 (defendants' undisputed fact no. 60 citing Lindgren declaration, ECF No. 215-11 at 4); ECF No. 216 at 43 (plaintiff's response).)

61.  However, on August 25, 2020, laboratory study results revealed that plaintiff had a normal hemoglobin A1c of 5.1, which is proof that plaintiff developed neither prediabetes nor diabetes in 2020.  (ECF No. 215-2 at 8 (defendants' undisputed

24

1   fact no. 61 citing Lindgren declaration, ECF No. 215-11 at 4; ECF No. 215-12 at 9

2   (August 25, 2020 laboratory results).)

3      In response to defendants' undisputed fact no. 61, plaintiff states, "Don't know."

4   Plaintiff's lack of knowledge regarding the facts alleged in undisputed fact no. 61

5   does not render defendants' undisputed fact no. 61 disputed.

6   62. Defendants' undisputed fact no. 62 is Dr. Lindgren's opinion that Invega was

7      within the standard of care and a good treatment option.  (ECF No. 215-2 at 8

8      (defendants' undisputed fact no. 62 citing Lindgren declaration, ECF No. 215-11

9      at 5).)  The undersigned discusses Dr. Lindgren's opinion herein.

10   63. Defendants' undisputed fact no. 63 is that Dr. Lindgren also opined that there is

11      no evidence that substantive harm was caused by Invega during the time of the

12      original complaint.  (ECF No. 215-2 at 8-9 (defendants' undisputed fact no. 63,

13      citing Lindgren declaration, ECF No. 215-11 at 5).)  The undersigned discusses

14      Dr. Lindgren's opinion herein.

15   64. On April 7, 2020, the Office of Administrative Hearings found by clear and

16      convincing evidence that as a result of a serious mental illness or disorder, but for

17      psychiatric medication, plaintiff was a danger to others, he would revert to the

18      behavior that was the basis for the prior order authorizing involuntary medication,

19      and he lacked insight regarding such that it was unlikely that he would be able to

20      manage his own medication regimen.  (ECF No. 215-2 at 9 (defendants'

21      undisputed fact no. 64, citing April 7, 2020 order, ECF No. 215-5 at 29-31[11]).)

22      In response to defendants' undisputed fact no. 64, plaintiff states, "Plaintiff deny!

23      See Nov. 22, 2018 CDCR Rule Violation and Doctor J. Elliott perjury December

24      2018." (ECF No. 216 at 44.)  The undersigned finds that plaintiff's allegations in

25      response to defendants' undisputed fact no. 64 do not demonstrate that undisputed

26   

27   [11]   The undersigned takes judicial notice of the April 7, 2020 order by the Office of
      Administrative Hearings.  Lee, 250 F.3d at 689.

28

1          fact no. 64 is disputed.

2              65.  The Office of Administrative Hearings ordered that plaintiff be involuntarily

3                    medicated from April 7, 2020, to April 7, 2021.  (ECF No. 215-2 at 9 (defendants'

4                    undisputed fact no. 65 citing April 7, 2020 order, ECF No. 215-5 at 31); plaintiff's

5                    response (ECF No. 216 at 44).)

6              66. On August 3, 2022, the Office of Administrative Hearings found by clear and

7                    convincing evidence that as a result of a serious mental illness or disorder, but for

8                    psychiatric medication, plaintiff was a danger to others, he would revert to the

9                    behavior that was the basis for the prior order authorizing involuntary medication,

10                   and he lacked insight regarding his need for psychiatric medication, such that it

11                   was unlikely that he would be able to manage his own medication regimen.  (ECF

12                   No. 215-2 at 9 (defendants' undisputed fact no. 66 citing August 3, 2022 order,

13                   ECF No. 215-5 at 43-45[12]).)

14                   In response to defendants' undisputed fact no. 66, plaintiff states, "Plaintiff deny!

15                   See March 2, 2022 2602 order."  (ECF No. 216 at 44.)  Plaintiff does not clearly

16                   identify the March 2, 2022 2602 order to which he refers.  Accordingly, the

17                   undersigned finds that plaintiff has not demonstrated that defendants' undisputed

18                   fact no. 66 is disputed.

19             67.  Also on August 3, 2022, the Office of Administrative Hearings ordered that

20                   plaintiff be involuntarily medicated from August 3, 2022 to August 3, 2023.  (ECF

21                   No. 215-2 at 9 (defendants' undisputed fact no. 67 citing August 3, 2022 order

22                   ECF No. 215-5 at 43-45).)

23                   In response to defendants' undisputed fact no. 67, plaintiff states, "Plaintiff deny!

24                   See 1983 lawsuit filed Sept. 2022."  (ECF No. 216 at 44.)  The undersigned finds

25                   that plaintiff's response to defendants' undisputed fact no. 67 does not demonstrate

26                   that undisputed fact no. 67 is disputed.

27    _____

28    [12]  The undersigned takes judicial notice of the August 3, 2022 order by the Office of
Administrative Hearings.  Lee, 250 F.3d at 689.

1      V.      Discussion:  Execution of Keyhea Order

2             As discussed above, plaintiff appears to argue that defendants should not have prescribed

3      Invega, or any other psychiatric medication, to plaintiff because he is not mentally ill.

4             At the outset, the undersigned finds that plaintiff does not appear to challenge the April 7,

5      2020 Keyhea order by the Office of Administrative Hearings granting the petition for plaintiff to

6      be involuntarily medicated.  Instead, plaintiff appears to raise a claim challenging defendants' per

7      se execution of the April 7, 2020 Keyhea order.

8             The undersigned finds that defendants are entitled to absolute immunity from plaintiff's

9      claim challenging their per se execution of the April 7, 2020 Keyhea order.  See Kulas v. Valdez,

10     159 F.3d 453, 457 (9th Cir 1998) (Trott, J., concurring) ("This circuit has repeatedly stated that

11     quasi-judicial immunity protects those who execute [state] court orders from liability in civil

12     rights actions[.]" (collecting cases)).  On these grounds, defendants should be granted summary

13     judgment as to plaintiff's claim challenging their per se execution of the April 7, 2020 Keyhea

14     order.

15            The undersigned clarifies that while defendants are immune from plaintiff's claim

16     challenging their per se execution of the April 7, 2020 Keyhea order, they are not immune from

17     plaintiff's claim alleging that they disregarded his complaints regarding the side effects of Invega.

18     In making this ruling, the undersigned observes that in the petition to renew the expiring Keyhea

19     order, defendant Rauf requested that plaintiff be administered Invega.  (ECF No. 215-5 at 6.)  The

20     April 7, 2020 order granted defendants the authority to administer psychiatric medication and

21     does not specifically mention Invega.  (ECF No. 215-5 at 29-31.)  Therefore, it does not appear

22     that the April 7, 2020 order specifically authorized the administration of Invega.  However, even

23     if the April 7, 2020 order generally authorized defendants to administer Invega, defendants would

24     not be immune from a claim by plaintiff that they ignored his complaints regarding side effects

25     caused by this medication.

26            Defendants also argue that plaintiff's claims challenging defendants' execution of the

27     April 7, 2020 Keyhea order are barred by the Rooker-Feldman doctrine.  Under the Rooker-

28     Feldman doctrine, a federal district court is precluded from hearing "cases brought by state-court

27

1    losers complaining of injuries caused by state-court judgments rendered before the district court

2    proceedings commenced and inviting district court review and rejection of those judgments."

3    Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  The undersigned

4    need not reach this argument because defendants are entitled to absolute immunity as to

5    plaintiff's claim challenging their per se execution of the April 7, 2020 Keyhea order.

6            The undersigned also clarifies that plaintiff's claim alleging that defendants ignored his

7    complaints regarding the side effects of Invega is not barred by the Rooker-Feldman doctrine.  As

8    discussed above, the April 7, 2020 Keyhea granted defendants the authority to administer

9    psychiatric medication to plaintiff.  (ECF No. 215-5 at 29-31.)  The April 7, 2020 Keyhea order

10   does not mention Invega.  (Id.)  This court's consideration of plaintiff's claim challenging

11   defendants' alleged disregard of his complaints regarding the side effects of Invega does not

12   involve a review or rejection of the April 7, 2020 Keyhea order.

13   VI.     Discussion:  Side Effects of Invega

14           A.  Exhaustion of Administrative Remedies

15           *Legal Standard for Administrative Exhaustion*

16           Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

17   subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA,

18   "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

19   any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

20   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

21   Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

22   seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

23   inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

24   exhaustion of available administrative remedies."  Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)

25   (citations omitted).  However, "inmates are not required to specially plead or demonstrate

26   exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007).  Instead, "the

27   defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense," and it

28   is the defendant's burden "to prove that there was an available administrative remedy, and that the

28

1    prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1171-72 (9th

2    Cir. 2014) (en banc) (citations omitted).

3            *Discussion*

4            Defendants argue that plaintiff failed to exhaust administrative remedies as to his claim

5    alleging that defendants ignored his complaints regarding the side effects of Invega.  Defendants

6    argue that the six grievances filed by plaintiff discussed in the statement of undisputed facts

7    demonstrate that plaintiff failed to exhaust administrative remedies.  Although not referenced in

8    defendants' statement of undisputed facts, the undersigned observes that defendants presented

9    evidence that these six grievances are the only grievances filed by plaintiff during the relevant

10   time period related to plaintiff's claim challenging the administration of Invega.  (ECF No. 215-

11   14 at 3 (Gates declaration).[13])

12           In his opposition, plaintiff appears to argue that he exhausted administrative remedies by

13   filing a habeas corpus petition challenging the April 7, 2020 order granting the Keyhea petition.

14   While plaintiff's habeas corpus petition challenged the order granting the Keyhea petition, and

15   also raising claims regarding side effects from Invega, plaintiff was still required to exhaust

16   administrative remedies regarding his claim that defendants ignored his complaints regarding the

17   side effects of Invega.  Plaintiff's habeas corpus petition challenging the order granting the

18   Keyhea petition did not exhaust plaintiff's administrative remedies as to this claim.

19           Plaintiff also attaches to his opposition several administrative grievances that do not raise

20   claims regarding the administration of Invega in 2020 while plaintiff was housed at CMF and

21   KVSP.  Plaintiff attaches a grievance he apparently filed while housed at the California Health

---

[13]    Defendant submitted the declaration of S. Gates, employed by CCHCS within the Policy and
Risk Management Services ("PRMS") division as the Chief of HCCAB.  (ECF No. 215-14.)  In
his declaration, S. Gates states that he reviewed plaintiff's health care/appeal grievance history for
any health care appeals/grievances originating from CMF and KVSP within the timeframe of
May 2020 through August 19, 2020 regarding plaintiff's placement on Invega.  (Id. at 3.)  S.
Gates states that this timeframe coves the time period from the date of plaintiff's allegations at
CMF and KVSP until the date he filed this lawsuit.  (Id.)  It is clear that S. Gates meant to
identify the timeframe of grievances he searched as being from April 2020 through August 19,
2020, as the Keyhea order that led to the administration of Invega was issued in April 2020, and
in his declaration, S. Gates identifies one of the relevant grievances (CMF HC 20000539) as
having been submitted on April 16, 2020.

1    Care Facility ("CHCF") in 2021.  (ECF No. 216 at 54-56.)  This grievance concerns treatment

2    plaintiff received at CHCF.  Plaintiff also attaches a grievance he filed alleging that Officers

3    Stewart, Sevilla and Nichols treated inmates at KVSP without dignity and respect.  (Id. at 135-

4    37.)  Plaintiff also attaches a grievance he filed alleging that he was assaulted in 2014.  (Id. at

5    216-20).  Plaintiff also attaches documents related to a grievance he filed in 2015 alleging misuse

6    of force.  (Id. at 214-15.)  These grievances did not administratively exhaust the claims raised in

7    the instant action.

8            Turning to the six grievances discussed in defendants' statement of undisputed facts, it is

9    undisputed that five of these grievances failed to exhaust plaintiff's administrative remedies

10   because plaintiff failed to submit these grievances for headquarters' level of review, i.e.,

11   grievance nos. CMF HC 20000539, KVSP 20000543, KVSP HC 20000542, KVSP HC 20000551

12   and KVSP 20000682.[14]

13           The undersigned observes that four of plaintiff's grievances that did not reach

14   headquarters' level of review were properly rejected for failing to comply with grievance

15   procedures.  Woodford v. Ngo, 548 U.S. 81, 89-96 (2006) (exhaustion requires that the prisoner

16   complete the administrative review process in accordance with all applicable procedural rules).

17   Grievance no. KVSP HC 20000551 was properly rejected as duplicative of another grievance.

18   The undersigned observes that the institutional response to this grievance advised plaintiff that he

19   could resubmit this grievance if he believed that it was not duplicative.  (ECF No. 215-15 at 66.)

20   Plaintiff apparently did not resubmit this grievance.

21           Grievance nos. KVSP HC 20000543, KVSP HC 20000552 and KVSP HC 20000683 were

22   properly rejected for violating the regulation permitting only one health care grievance every 14

23   days.  Grievance no. KVSP HC 20000543 was properly rejected as excessive because it was

24   received by the Health Care Office on the same day the Health Care Office received grievance no.

---

25   [14]  In the summary judgment motion, defendants argue that grievances CMF HC 20000539,
26   KVSP HC 20000543, KVSP HC 2000551 did not exhaust plaintiff's administrative remedies
     because these grievances failed to name any defendants.  Because these grievances did not reach
27   the final level of review, thereby failing to exhaust administrative remedies, the undersigned need
     not reach defendants' argument that these grievances failed to exhaust plaintiff's administrative
28   remedies by failing to name defendants.

1    KVSP HC 20000542 i.e., July 20, 2020.  Grievance no. KVSP HC 20000552 was properly

2    rejected as excessive because it was received by the Health Care Office on July 21, 2020, which

3    was one day after the Health Care Office received KVSP HC 20000542 on July 20, 2020.

4    Grievance no. KVSP HC 20000683 was properly rejected as excessive because it was received by

5    the Health Care Office on August 24, 2020, which was the same day the Health Care Office

6    received grievance no. KVSP HC 20000676.

7          Plaintiff's fifth grievance that did not reach headquarters' level of review, i.e., grievance

8    No. CMF HC 20000539, failed to do so because plaintiff did not submit this grievance for

9    headquarters' level of review.

10         The undersigned next considers whether plaintiff's only relevant grievance that reached

11   headquarters' level of review, i.e., KVSP HC 20000542, exhausted plaintiff's administrative

12   remedies.  It is undisputed that this grievance alleged that plaintiff's psychotropic medication

13   caused plaintiff baldness.  This is the only alleged side effect of Invega raised in this grievance.

14         Defendants argue that grievance KVSP HC 20000542 failed to exhaust plaintiff's claim

15   alleging that Invega caused baldness because plaintiff failed to name any defendants in this

16   grievance.  The undersigned addresses this argument herein.

17         While the Supreme Court has held that the PLRA does not specifically require an

18   individual defendant to be identified by name in an administrative grievance in order to properly

19   exhaust a claim, this may be required by the particular procedural rules that a prisoner must

20   follow.  Jones v. Bock, 549 U.S. 199 (2007).  As stated above, in Woodford v. Ngo, 548 U.S. at

21   89-96, the Supreme Court emphasized that proper administrative exhaustion of a claim requires a

22   prisoner to comply with all of the prison's deadlines and other critical procedural rules in order to

23   allow the agency to address the complaint on the merits.  Section 3084.2(a)(3) of Title 15 of the

24   California Code of Regulations requires an inmate to "list all staff member(s) involved and shall

25   describe their involvement in the issue" being grieved.  This includes listing "the staff member's

26   last name, first initial, title or position, if known... [and] [i]f the inmate... does not have the

27   requested identifying information about the staff member(s), he or she shall provide any other

28   available information that would assist the appeals coordinator in making a reasonable attempt to

1   identify the staff member(s) in question."  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed and

2   replaced June 1, 2020).

3          The Ninth Circuit Court of Appeal held that a prisoner exhausts administrative remedies

4   "despite failing to comply with a procedural rule if prison officials ignore the procedural problem

5   and render a decision on the merits at each available step of the administrative process."  Reyes v.

6   Smith, 810 F.3d 654, 658 (9th Cir. 2016).  In Reyes, the Ninth Circuit found that plaintiff

7   properly exhausted his administrative remedies with respect to two doctors on the prison's Pain

8   Management Committee even though they were not specifically named in plaintiff's

9   administrative grievances.  810 F.3d 654.  In reaching this conclusion, the Ninth Circuit found

10   that there must be a "sufficient connection" between the claim in the administrative grievance and

11   the unidentified defendants to allow prison officials to have "notice of the alleged deprivation"

12   and an "opportunity to resolve it."  Reyes, 810 F.3d at 959.

13          Prison officials rendered a decision regarding KVSP HC 20000542 despite plaintiff's

14   failure to identify the name of a defendant or otherwise identify a doctor who prescribed Invega.

15   The institutional level response to KVSP HC 20000542 indicates that the prison officials

16   reviewing the grievance knew the identity of plaintiff's treating psychiatrist, i.e., Dr. Rauf.  The

17   institutional response states that on August 23, 2020, plaintiff was evaluated by defendant Rauf to

18   discuss side effects of psych meds.  (ECF No. 215-15 at 49.)  During this evaluation, plaintiff did

19   not bring up baldness as a concern.  (Id.)  Defendant Rauf was plaintiff's treating psychiatrist at

20   the time the institutional level decision was rendered.  (See ECF No. 215-7 at 2 (Rauf

21   declaration).)  For these reasons, the undersigned finds that grievance KVSP HC 20000542

22   exhausted plaintiff's claim alleging that defendant Rauf ignored his claims that Invega caused

23   him baldness despite plaintiff's failure to name defendant Rauf in this grievance.

24          In conclusion, for the reasons discussed above, the undersigned finds that plaintiff failed

25   to exhaust administrative remedies as to all of his claims but for his claim alleging that defendant

26   Rauf ignored his claim that Invega caused baldness.  Accordingly, the undersigned recommends

27   that defendants' motion for summary judgment based on plaintiff's failure to exhaust

28   administrative remedies be granted except for plaintiff's claim alleging that defendant Rauf

1    ignored his complaints that Invega caused baldness.

2         A.   Merits of Plaintiff's Claims

3              *Legal Standard*

4         Deliberate indifference to the serious medical needs of an incarcerated person constitutes

5    cruel and unusual punishment in violation of the Eighth Amendment.  Estelle v. Gamble, 429

6    U.S. 97, 104 (1976).  A finding of "deliberate indifference" involves an examination of the

7    seriousness of the plaintiff's medical need (determined objectively) and the nature of the

8    defendant's response (determined by defendant's subjective state of mind).  McGuckin v. Smith,

9    974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Technologies, Inc. v.

10   Miller, 104 F.3d 1133, 1136 (9th Cir.1997) (en banc).  On the objective prong, a "serious"

11   medical need exists if the failure to treat "could result in further significant injury" or the

12   "unnecessary and wanton infliction of pain."  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir.

13   2014).  On the subjective prong, a prison official must know of and disregard a serious risk of

14   harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Such indifference may appear when a

15   prison official intentionally denies or delays care, or intentionally interferes with treatment once

16   prescribed.  Estelle, 429 U.S. at 104-05.

17        A delay in treatment, without more, is likewise insufficient to state a claim.  Shapley v.

18   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  A plaintiff must also

19   demonstrate harm from the official's conduct.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

20   2006).  And the defendant's actions must have been both an actual and proximate cause of this

21   harm.  Lemire v. CDCR, 726 F.3d 1062, 1074 (2013).

22            *Plaintiff's Claim Alleging Baldness and Halitosis as Side Effect of Invega*

23        As discussed above, plaintiff exhausted administrative remedies as to his claim alleging

24   that defendant Rauf disregarded his complaints that Invega caused him baldness.  Defendants do

25   not specifically address the merits of this claim in their summary judgment motion.  However, for

26   the reasons stated herein, the undersigned finds that this claim should be dismissed for failing to

27   state a potentially colorable claim for relief.  28 U.S.C. § 1915(e)(2) (notwithstanding any filing

28   fee that may have been paid, court may dismiss case at any time if it determines that it fails to

1  state claim on which relief may be granted).

2         The undersigned finds that, as a matter of law, plaintiff's claim alleging that defendant

3  Rauf ignored his complaint that Invega caused him to suffer baldness fails to state a potentially

4  colorable Eighth Amendment claim.  White v. Lengel, 2019 WL 2717968, at * 3 (N.D. Ohio June

5  28, 2019) ("While hair loss may be an unpleasant side effect of his current medication, it is not

6  sufficiently serious in itself to trigger Eighth Amendment concerns."); cf. LaTouche v. Rockland

7  County, 2022 WL 953111, at *8 (S.D. N.Y. March 29, 2022) (hair loss is generally not deemed a

8  serious medical condition).  Accordingly, the undersigned recommends that plaintiff's claim

9  alleging that defendant Rauf disregarded his complaints that Invega caused him to suffer baldness

10  be dismissed.

11        Although not addressed by defendants, the undersigned also finds that plaintiff's claim

12  alleging that Invega caused him to suffer halitosis as a side effect does not state a potentially

13  colorable Eighth Amendment claim.  Halitosis, while an alleged unpleasant side effect of Invega,

14  is not sufficiently serious to violate the Eighth Amendment.  Colwell v. Bannister, 763 F.3d at

15  1066 (for Eighth Amendment claim, a "serious" medical need exists if the failure to treat "could

16  result in further significant injury" or the "unnecessary and wanton infliction of pain.").

17  Accordingly, this claim should be dismissed.

18        *Defendant Bansal*

19        Defendants argue that defendant Bansal should be granted summary judgment because it

20  is undisputed that he was not plaintiff's treating psychiatrist and his only interaction with plaintiff

21  involved interviewing plaintiff for grievance no. CMF HC 20000539.  In this grievance, plaintiff

22  requested that the April 7, 2020 Keyhea order for involuntary administration of psychiatric

23  medication be cancelled.  (ECF No. 215-5 at 37.)  In this grievance, plaintiff did not complain

24  about any side effects from Invega.  (Id.)

25        In his declaration submitted in support of the summary judgment motion, defendant

26  Bansal states that in grievance CMF HC 20000539, plaintiff requested to be removed from an

27  order directing him to be involuntarily medicated because psychiatrists had determined that he

28  was a danger to himself.  (ECF No. 215-6 at 2.)  Defendant Bansal states that he did not decide

34

1    the outcome of this grievance and was never informed of the outcome.  (Id.)  Defendant Bansal

2    states that, to the best of his recollection, if plaintiff had informed him during the interview that

3    he was experiencing side effects from the anti-psychotic medications being administered to him,

4    he would likely have told plaintiff to speak with his primary psychiatrist about this issue.  (Id.)

5         Assuming plaintiff told defendant Bansal about the side effects he allegedly suffered from

6    Invega during the interview regarding grievance no. CMF HC 20000539, the undersigned finds

7    that defendant Bansal did not act with deliberate indifference.  Because grievance no. CMF HC

8    20000539 did not concern the alleged side effects caused by Invega, defendant Bansal did not act

9    with deliberate indifference by advising plaintiff to speak with his primary psychiatrist about any

10   side effects plaintiff experienced from Invega.  By advising plaintiff of the appropriate doctor

11   with whom to raise his concerns regarding alleged side effects, defendant Bansal, who was not

12   plaintiff's treating psychiatrist, did not act with deliberate indifference.

13        For the reasons discussed above, the undersigned recommends that defendant Bansal be

14   granted summary judgment.

15   *Defendant Rauf*

16        In the summary judgment motion, defendants first argue that defendant Rauf did not act

17   with deliberate indifference when he sought a renewal of the Keyhea order expiring on February

18   28, 2020.  To the extent plaintiff raises such a claim, the undersigned finds that the undisputed

19   evidence demonstrates that defendant Rauf did not act with deliberate indifference when he

20   submitted a petition to renew the February 28, 2019 Keyhea order for another year.  The

21   undisputed evidence demonstrates that on January 29, 2020, defendant Rauf determined that

22   plaintiff continued to pose a danger to others due to his schizoaffective disorder.  In his opinion,

23   defendant Rauf determined that plaintiff had a history of aggressive behavior, frequent fights,

24   crisis bed admissions and suicidal ideation and attempts, to which he would revert without

25   involuntary psychiatric medication.  This undisputed evidence demonstrates that defendant Rauf

26   did not act with deliberate indifference in requesting a renewal of the Keyhea order expiring on

27   February 28, 2020.

28        The undersigned next considers defendants' argument that defendant Rauf did not act with

35

deliberate indifference with respect to plaintiff's complaints that Invega caused him to suffer

gynecomastia, borderline diabetes, chest pain and heart palpitations when he saw plaintiff on

August 11, 2020 and August 23, 2020.

The undersigned first considers whether defendant Rauf acted with deliberate indifference

to plaintiff's complaints that Invega caused him to suffer borderline diabetes.  It is undisputed that

on August 11, 2020, plaintiff complained about increased lipids and increased risk from diabetes

from his psychiatric medications.  It is undisputed that on August 11, 2020, defendant Rauf

reviewed plaintiff's recent laboratory tests, and noted that his lipid and hemoglobin levels were

within normal limits.  It is undisputed that on August 11, 2020, defendant Rauf ordered more

blood tests.  It is undisputed that on August 23, 2020, defendant Rauf reviewed the recent

laboratory tests and noted that plaintiff's hemoglobin and lipids were within normal limits.

The undersigned finds that this undisputed evidence demonstrates that defendant Rauf did not act

with deliberate indifference to plaintiff's claims that Invega was causing him to suffer borderline

diabetes.

The undersigned next considers whether defendant Rauf acted with deliberate indifference

to plaintiff's complaints that Invega caused him to suffer gynecomastia.  In the summary

judgment motion, defendants suggest that plaintiff's complaints of having gynecomastia were not

credible.  Defendants refer to the declaration of Dr. Lindgren (defendants' medical expert) who

states that plaintiff's complaints on April 29, 2020, about gynecomastia being caused by Invega,

after having been on Invega for approximately one month, were a medical impossibility, given

that gynecomastia develops over many months or sometimes years.  (ECF No. 215-11 at 4.)

Defendants suggest that plaintiff's later complaints of gynecomastia were also not credible

because his complaints of gynecomastia on April 29, 2020, were a medical impossibility.

Defendants also suggest that plaintiff's complaints that he suffered from gynecomastia in

August 2020, when defendant Rauf saw plaintiff on two occasions, were not credible because

plaintiff complained that another medication, haloperidol, caused him to suffer the same side

effects as Invega, including gynecomastia, chest pains, heart palpitation and weight gain.  (Id. at

4.)  Dr. Lindgren states that, "[t]his identical list that Driver recites regarding two different

1   medications, coupled with his fixed paranoid delusions and with his intense to desire all

2   medications, calls into question the accuracy of his assertions."  (<u>Id.</u>)

3       Most importantly, in his declaration Dr. Lindgren also states that after reviewing

4   plaintiff's relevant medical records, he can find no evidence of gynecomastia caused by any

5   psychiatric medications administered to plaintiff.  (<u>Id.</u> at 5.)  The lack of medical records

6   demonstrating that plaintiff suffered from gynecomastia contradicts plaintiff's claim that he

7   suffered from gynecomastia in August 2020.

8       On summary judgment, the court does not assess credibility.  <u>Anderson v. Liberty Lobby,</u>

9   <u>Inc.</u>, 477 U.S. 242, 249 (1986).  However, "[w]hen opposing parties tell two different stories, one

10   of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

11   court should not adopt that version of the facts for purposes of ruling on a motion for summary

12   judgment."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  Based on the lack of medical records

13   demonstrating that plaintiff suffered from gynecomastia caused by Invega, the undersigned finds

14   that plaintiff's claim that he suffered from gynecomastia when defendant Rauf examined him in

15   August 2020 is so implausible that no reasonable jury could believe it.[15]  Accordingly, due to the

16   lack of medical records supporting this claim, the undersigned finds that defendant Rauf should

17   be granted summary judgment as to plaintiff's claim that he disregarded plaintiff's complaint that

18   he had gynecomastia as a result of taking Invega.

19       The undersigned next considers whether defendant Rauf acted with deliberate indifference

20   to plaintiff's alleged complaints that Invega caused him to suffer chest pain and heart palpitations.

21       In the summary judgment motion, defendants argue that plaintiff's attempts to claim that

22   he suffered from a side effect of Invega is improper.  "[G]enerally plaintiff must prove causation

23   by expert medical testimony except where there is an obvious causal relationship--one where

24   injuries are immediate and direct."  <u>Walker v. Contra Costa County</u>, 2006 WL 3371438 at *9

25   (N.D.Cal. 2006), quoting <u>In re Baycol Products Litigation</u>, 321 F.Supp.2d 1118, 1125

---

26   [15] As discussed above, on June 25, 2020, defendant Maya noted that plaintiff's prolactin levels
27   were slightly elevated.  Because there is no evidence in plaintiff's medical records that he
     suffered from gynecomastia caused by Invega, plaintiff's slightly elevated prolactin level on June
28   25, 2020 does not demonstrate that he suffered from gynecomastia in August 2020.

(D.Minn.2004) (citation omitted) (internal quotation omitted).  While plaintiff cannot demonstrate that Invega caused him to suffer chest pain and heart palpitations without expert testimony, plaintiff may testify that he suffered chest pain and heart palpitations after he began taking Invega.  Fed. R. Evid. 701(a).

In the summary judgment motion, defendants challenge the credibility of plaintiff's complaints regarding chest pain and heart palpitations.  As discussed above, in his declaration Dr. Lindgren observed that plaintiff's complaints about Invega, including chest pain and heart palpitations, were identical to claims plaintiff made about another antipsychotic medication he occasionally took, haloperidol.  (ECF No. 215-11 at 4.)  Dr. Lindgren states that the identical list plaintiff recites regarding two different medications, coupled with his fixed paranoid delusions and with his intense desire to avoid all medications, calls into question the accuracy of his assertions.  (Id.)

Dr. Lindgren also states, "There is no evidence in the medical record of prediabetes or gynecomastia caused by any psychiatric medications administered to Driver."  (Id. at 5.)  Dr. Lindgren does *not* state that there is no medical record of chest pain or heart palpitations caused by psychiatric medications administered to plaintiff.  Based on this omission, it is unclear to the undersigned if Dr. Lindgren is suggesting that there is evidence in plaintiff's medical records of chest pain or heart palpitations caused by Invega administered to plaintiff.

The undersigned observes that plaintiff attaches to his opposition an Institutional Level Response to grievance no. CHCF HC 21001680.  (ECF No. 216 at 55-56.)  The date of this response is illegible, but it appears to have been issued in 2021 while plaintiff was housed at the California Health Care Facility ("CHCF").  The response states, in part, "You state you understand that you are currently under a PC2602 [Keyhea order].  You stated that it is your intention to adhere to psychiatric medications.  You stated that you were aware that certain psychiatric medications may increase your cardiac risk and you want medications to have less potential for cardiac complications.  The reviewing psychiatrist, Dr. Carrillo, recommended decreasing or limiting anticholinergic load and would limit medications that have the potential for increased hypertension given your bradycardia."  (Id. at 54-55.)  While it is not clear whether the

psychiatric medication addressed in this grievance is Invega, this response suggests that plaintiff's psychiatric medications could impact plaintiff's heart health and officials at CHCF took this into consideration.

Plaintiff also attaches to his opposition several ECG Reports.  An ECG test, aka electrocardiogram, records the electrical signals in the heart; it is used to detect heart problems and monitor heart health.  See https://www.mayoclinic.org/tests-procedures/ekg/about/pac-20384983.  An ECG report dated November 16, 2021, states that plaintiff had an abnormal ECG with possible octopic atrial bradycardia.  (Id. at 80.)  An ECG report dated September 7, 2021, also states that plaintiff had an abnormal ECG with "marked sinus bradycardia with 1st degree AV block."  (Id. at 81.)  The undersigned also observes that plaintiff attached to a pleading filed February 27, 2023, an ECG report dated April 30, 2020.  (ECF No. 219 at 23.)  The April 30, 2020 ECG report states that plaintiff had an abnormal ECG with "sinus rhythm (slow), marked left axis deviation, consistent LAFB, anterosepial infarc," and "moderate intraventricular conduction delay."  (Id.)

Even without consideration of plaintiff's evidence set forth above, the undersigned finds that defendants did not meet their initial summary judgment burden of demonstrating that Invega did not cause plaintiff to suffer chest pain and heart palpitations because Dr. Lindgren's declaration is unclear on this point.  While Dr. Lindgren stated that no medical records exist showing that plaintiff had gynecomastia or diabetes as a result of taking Invega, Dr. Lindgren does not address whether medical records exist showing that Invega caused plaintiff to suffer chest pain and heart palpitations.  The undersigned is puzzled by this omission.

In his declaration, Dr. Lindgren also states that his review and interpretation of the chart documentation revealed no evidence that "substantive harm" was caused by Invega, both during the time of the original complaint in 2020 and since that time.  (ECF No. 215-11 at 5.)  As discussed above, Dr. Lindgren's declaration is not clear as to whether plaintiff suffered chest pain and heart palpitations caused by Invega during the relevant time period.  It is unclear if Dr. Lindgren is suggesting that chest pain and heart palpitations do not constitute "substantive harm."  The undersigned requires further explanation of these matters before considering Dr. Lindgren's

1   opinion that Invega did not cause plaintiff "substantive harm."

2          In his declaration, Dr. Lindgren also states that prescribing Invega for plaintiff was within

3   the standard of care because other psychiatrists prescribed Invega for plaintiff.  In his declaration,

4   Dr. Lindgren states that between September 2020 and January 2023, Invega was prescribed often

5   for plaintiff.  (ECF No. 215-11 at 5.)  Dr. Lindgren states that during this 27-month period, of the

6   many psychiatrists that interacted with plaintiff, 13 of them determined that Invega was the best

7   choice of treatment.  (Id.)  Dr. Lindgren states that in his opinion, Invega as a treatment for

8   plaintiff is within the standard of care.  (Id.)

9          While other psychiatrists may have prescribed Invega for plaintiff, Dr. Lindgren does not

10  address whether the dose of Invega plaintiff received in August 2020 is the same prescribed by

11  the other psychiatrists.  Dr. Lindgren does not address, for example, whether other psychiatrists

12  prescribed a lower dose of Invega that did not cause plaintiff to complain of chest pain and heart

13  palpitations.  Without additional information regarding the prescriptions for Invega made by other

14  psychiatrists, as well as additional information regarding whether Invega caused plaintiff to suffer

15  chest pain and heart palpitations, the undersigned cannot evaluate Dr. Lindgren's opinion that the

16  prescriptions for Invega made by other doctors demonstrates that plaintiff's prescription for

17  Invega during the relevant time period was within the standard of care.

18         In his declaration, Dr. Lindgren also states that if plaintiff suffered *any* side effects from

19  Invega, the decision to administer this medication was justified given that the benefits clearly

20  outweigh the risks or side effects.  (ECF No. 215-11 at 5.)  The undersigned finds that Dr.

21  Lindgren's opinion that the benefits of plaintiff taking Invega outweigh *any* side effects plaintiff

22  may suffer is unexplained and conclusory.  Rios v. Gipson, 2018 WL 2155531, at *3 (E.D. Cal.

23  May 10, 2018), citing Sitrick v. Dreamworks, LLC, 516 F.3d 993 (Fed. Cir. 2008) (explaining

24  "[c]onclusory expert assertions cannot raise triable issues of material fact on summary

25  judgment").  "An expert report 'must include 'how' and 'why' the expert reached a particular

26  result, not merely the expert's conclusory opinions...[because] an expert who supplies only an

27  ultimate conclusion with no analysis supplies nothing of value to the judicial process."  Id.

28  (quoting Finwall v. City of Chicago, 239 F.R.D. 494, 501 (N.D.Ill.2006)).  Accordingly, the

1   undersigned disregards Dr. Lindgren's opinion that *any* side effects plaintiff suffered as a result of

2   taking Invega were outweighed by the benefits.

3        Defendants also argue that plaintiff's allegations that defendant Rauf disregarded his

4   complaints of chest pain and heart palpitations caused by Invega amounts to a difference of

5   medical opinion and a disagreement over a matter of medical judgment, which does not rise to the

6   level of a deliberate indifference claim.  See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir.

7   2004) (a mere difference of medical opinion is insufficient to establish deliberate indifference).

8   Without additional information regarding the nature and extent of plaintiff's chest pain and heart

9   palpitations, the undersigned cannot determine whether plaintiff's allegations regarding defendant

10  Rauf's alleged disregard of his complaints of chest pain and heart palpitations amount to a mere

11  difference of opinion.

12       For the reasons set forth above, the undersigned finds that defendants have not

13  demonstrated that plaintiff did not suffer chest pain and heart palpitations as a result of taking

14  Invega during the relevant time period.  Assuming plaintiff suffered from chest and heart

15  palpitations caused by Invega, the undersigned also finds that defendants have not demonstrated

16  that the continued administration of Invega despite these side effects did not amount to deliberate

17  indifference.  Accordingly, defendant Rauf should not be granted summary judgment on the

18  merits of plaintiff's Eighth Amendment claim alleging that he ignored plaintiff's complaints that

19  Invega caused chest pain and heart palpitations.

20       *Defendant Maya*

21       At the outset, the undersigned clarifies that defendant Maya is a registered nurse and a

22  psychiatric nurse practitioner.  (ECF No. 215-9 at 1 (Maya declaration).)  Defendants argue that

23  defendant Maya did not act with deliberate indifference to plaintiff when she saw him on June 28,

24  2020 and July 14, 2020.  Defendants' arguments regarding defendant Maya are essentially the

25  same arguments made regarding defendant Rauf.  The reasoning of the undersigned's analysis

26  regarding the summary judgment motion as to the claims against defendant Rauf is equally

27  applicable to the claims against defendant Maya.  Accordingly, for the reasons discussed above,

28  the undersigned recommends that defendant Maya be granted summary judgment as to all of

1  plaintiff's Eighth Amendment claims regarding the administration of Invega but for the claim that

2  she acted with deliberate indifference by ignoring plaintiff's complaints that Invega caused chest

3  pain and heart palpitations.

4        *Qualified Immunity*

5        Defendants also argue that they are entitled to qualified immunity.  The doctrine of

6  qualified immunity protects "government officials ... from liability for civil damages insofar as

7  their conduct does not violate clearly established statutory or constitutional rights of which a

8  reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  As the

9  Supreme Court has noted, qualified immunity protects "all but the plainly incompetent or those

10  who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986).  In evaluating

11  qualified immunity, the court must determine : (1) whether the facts, viewed in the light most

12  favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2)

13  whether the right was clearly established at the time of the alleged violation such that a

14  reasonable person in the defendant's position would have understood that his actions violated that

15  right.  Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (receded from in Pearson v. Callahan, 555

16  U.S. 223 (1009) (holding that while Saucier's two step sequence for resolving government

17  official's qualified immunity claims is often appropriate, courts may exercise their sound

18  discretion in deciding which of the two prongs should be addressed first)).  If the answer to either

19  inquiry is "no," then the defendant is entitled to qualified immunity and may not be held

20  personally liable for his or her conduct.  Glenn v. Washington Cty., 673 F.3d 864, 870 (9th Cir.

21  2011).

22        As discussed above, the undersigned finds no violation of plaintiff's constitutional rights

23  except for plaintiff's claims alleging that defendants Rauf and Maya disregarded his complaints

24  that Invega caused him to suffer chest pain and heart palpitations.  The undersigned herein

25  considers whether defendants Rauf and Maya are entitled to qualified immunity as to this claim.

26        Taking the facts in the light most favorable to plaintiff, the undersigned finds that

27  defendants Rauf and Maya violated plaintiff's Eighth Amendment right to adequate medical care

28  by disregarding his claims that Invega caused him to suffer chest pain and heart palpitations.

1    Without further factual development of whether the continued administration of Invega

2  was reasonable after plaintiff allegedly complained of chest pain and heart palpitations, the

3  undersigned cannot determine whether a reasonable person in defendants' positions would have

4  known that the continued administration of Invega to plaintiff violated the Eighth Amendment.

5  Accordingly, defendants Rauf and Maya are not entitled to qualified immunity as to this claim.

6         B.   Punitive Damages and Injunctive Relief

7    Defendants move for summary judgment as to plaintiff's claim for punitive damages on

8  the grounds that there is no evidence establishing that they acted with evil motive or intent or with

9  reckless and callous indifference.  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (punitive

10  damages may awarded when a defendant's conduct was "driven by evil motive or intent, or when

11  it involved reckless or callous indifference to the constitutional rights of others.").  The

12  undersigned need not reach the issue of whether plaintiff has met the standard for punitive

13  damages because defendants should be granted summary judgment for the reasons discussed

14  above.

15    In the complaint, plaintiff requested that the court order defendants to stop administering

16  Invega.  The undersigned construes this as a request for injunctive relief.  Defendants move to

17  dismiss plaintiff's claim for injunctive relief as moot on the grounds that plaintiff is no longer

18  housed at CMF or KVSP, where the alleged deprivations occurred.  Defendants argue that

19  plaintiff does not meet the "capable of repetition, yet evading review" exception to the mootness

20  doctrine because there is no indication that plaintiff will return to CMF or KVSP.

21    Because defendants are entitled to summary judgment, plaintiff is also not entitled to

22  injunctive relief.  On these grounds, plaintiff's request for injunctive relief should be dismissed.

23  Accordingly, the undersigned need not determine whether plaintiff's request for injunctive relief

24  meets the "capable of repetition, yet evading review" exception to the mootness doctrine.

25         C.   Plaintiff's Opposition—Remaining Matters

26    As observed by defendants in the reply, plaintiff may be attempting to raise a Fourteenth

27  Amendment claim in his opposition.  (ECF No. 216 at 8.)  Plaintiff may not amend his complaint

28  by way of his opposition to defendants' summary judgment motion to raise a new claim.  See

1    Pickern v. Pier 1 Imports (U.S.), Inc., 454 F.3d 963, 969 (9th Cir. 2006) (refusing to consider new

2    allegations raised for the first time in opposition to motion for summary judgment because

3    opposition "failed to provide adequate notice" to defendants of new allegations).  Therefore, to

4    the extent plaintiff attempts to raise a Fourteenth Amendment claim in his opposition, this claim

5    is disregarded.

6         VII.    Conclusion re: Summary Judgment Motion

7         For the reasons discussed above, the undersigned recommends that defendants' summary

8    judgment motion on the grounds that plaintiff failed to exhaust administrative remedies be

9    granted except for plaintiff's claim alleging that defendant Rauf ignored his complaints that

10   Invega caused baldness.  For the reasons discussed above, the undersigned recommends that

11   plaintiff's claims alleging that defendant Rauf ignored his complaints that Invega caused baldness

12   and that all defendants ignored his complaints that Invega caused halitosis be dismissed for

13   failing to state potentially colorable claims for relief.

14        For the reasons discussed above, the undersigned also recommends that defendants'

15   summary judgment motion as to the merits of plaintiff's claims be granted except for plaintiff's

16   claim alleging that defendants Rauf and Maya ignored plaintiff's complaints that Invega caused

17   chest pain and heart palpitations.  While defendants Rauf and Maya are not entitled to summary

18   judgment as to the merits of plaintiff's claim alleging that they ignored his complaints that Invega

19   caused chest pain and heart palpitations, defendants Rauf and Maya are entitled to summary

20   judgment as to this claim based on plaintiff's failure to exhaust administrative remedies.

21        VIII.   Outstanding Motions

22             *Motion Requesting Investigation of Missing Legal Mail (ECF No. 212)*

23        On December 21, 2022, plaintiff filed a motion alleging that some of his legal mail from

24   March 2022 and April 2022 is missing.  (ECF No. 212.)  Plaintiff requests an investigation into

25   his missing legal mail.  (Id.)  Because the undersigned recommends that defendants' summary

26   judgment motion be granted, plaintiff's motion for an investigation regarding legal mail missing

27   from March 2022 and April 2022 is not warranted.  Accordingly, plaintiff's motion for an

28   investigation into his missing legal mail is denied.

1    *Motion for Appointment of an Expert Witness (ECF No. 219)*

2           On February 27, 2022, plaintiff filed a motion in which he appears to request that the

3    court approve a loan of $20,000 for plaintiff to obtain a heart failure specialist/expert witness.

4    (ECF No. 219.)   Plaintiff attaches to this motion ECG reports dated April 2020, January 2001,

5    June 2021, July 2021, August 2021, September 2021, November 2021, March 2022, October

6    2022 and November 2022.  (Id.)  Plaintiff also attaches several Health Care Services Request

7    forms.  (Id.)

8           Rule 706 of the Federal Rules of Evidence authorizes the court to appoint an independent

9    expert.  Such an appointment is within the discretion of the trial judge and may be appropriate

10   when "scientific, technical, or other specialized knowledge will assist the trier of fact to

11   understand the evidence or decide a fact in issue."  See Torbert v. Gore, 2016 WL 3460262, at *2

12   (S.D. Cal. June 23, 2016) (citation omitted); see also Armstrong v. Brown, 768 F.3d 975, 987 (9th

13   Cir. 2014) ("A Rule 706 expert typically acts as an advisor to the court on complex scientific,

14   medical, or technical matters.").

15          An expert appointed pursuant to Rule 706 does not serve as an advocate for either party,

16   and each party retains the ability to call its own experts.  Fed. R. Evid. 706(e); Faletogo v. Moya,

17   2013 WL 524037, at *2 (S.D. Cal. Feb. 12, 2013) (Rule 706 "does not contemplate court

18   appointment and compensation of an expert witness as an advocate for one of the parties.").  "The

19   in forma pauperis statute, 28 U.S.C. § 1915, does not authorize federal courts to appoint or

20   authorize payment for expert witnesses for prisoners or other indigent litigants."  Stakey v.

21   Stander, 2011 WL 887563, at *3 n.1 (D. Idaho Mar. 10, 2011).  "Ordinarily, the plaintiff must

22   bear the costs of his litigation, including expert expenses, even in pro se cases."  Stakey, 2011 WL

23   887563, at *3 n.1.

24          The undersigned is not authorized to appoint an expert on plaintiff's behalf.  Appointment

25   of an expert pursuant to Rule 706 to address the relationship between Invega and plaintiff's

26   alleged chest pain and heart palpitations is not warranted because plaintiff failed to exhaust

27   administrative remedies as to this claim.  Accordingly, plaintiff's motion for appointment of an

28   expert is denied.

1     *Motion for Order to Show Cause, Motion for Law Books and Motion for Protective Order*

2     *(ECF Nos. 221, 222, 224)*

3     On April 10, 2023, plaintiff filed a motion for a protective order.  (ECF No. 221.)  In this

4 motion, plaintiff requests that defendants be ordered to pay plaintiff $1,000,000 per day until

5 Invega is stopped due to the severe kidney and liver pain it causes plaintiff.  (Id.)  In support of

6 this request, plaintiff alleges that on March 21, 2023, he began experiencing pain near his kidneys

7 and livers after an Invega injection.  (Id.)

8     On April 19, 2023, plaintiff filed a motion requesting that he immediately be issued two

9 legal books that he purchased by mail order and did not receive.  (ECF No. 222.)

10     On May 1, 2023, plaintiff filed a motion for protective order.  (ECF No. 124.)  Plaintiff

11 alleges that on April 24, 2023, several inmate porters threatened to cut off plaintiff's face with a

12 razor given to them by Correctional Officers Guevarra and Soto.  (Id.)  Plaintiff alleges that he

13 fears for his life because CDCR white and Hispanic officers keep physically assaulting him.  (Id.)

14     At the time plaintiff filed his motion to show cause, motion for law books and motion for

15 protective order, he was housed at Salinas Valley State Prison ("SVSP").  Plaintiff continues to be

16 housed at SVSP.  Therefore, plaintiff's motions are addressed to prison officials at SVSP.

17     No defendants are located at SVSP.  This court is unable to issue an order against

18 individuals who are not parties to a suit pending before it, i.e., prison officials at SVSP.  See

19 Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).  For this reason,

20 plaintiff's motion to show cause, motion for law books and motion for protective order are

21 denied.  However, the undersigned is concerned by the claims regarding plaintiff's safety raised

22 in the motion for protective order filed May 1, 2023.  For this reason, the undersigned directs the

23 Clerk of the Court to serve a copy of plaintiff's motion for protective order on Supervising

24 Deputy Attorney General Monica Anderson.

25     Accordingly, IT IS HEREBY ORDERED that:

26     1.   Plaintiff's pending motions (ECF Nos. 212, 219, 221, 222 and 224) are denied;

27     2.  The Clerk of the Court is directed to serve Supervising Deputy Attorney General

28          Monica Anderson with these findings and recommendations and plaintiff' motion for

46

1    protective order (ECF No. 224); and

2    IT IS HEREBY RECOMMENDED that:

3    1.   Plaintiff's claims alleging that defendant Rauf ignored his complaints that Invega

4         caused him baldness and that all defendants ignored his complaints that Invega caused

5         him to suffer halitosis be dismissed for failing to state potentially colorable claims for

6         relief;

7    2.   Defendants' motion for summary judgment (ECF No. 215) be granted for the reasons

8         stated in these findings and recommendations.

9    These findings and recommendations are submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

14   objections shall be filed and served within fourteen days after service of the objections.  The

15   parties are advised that failure to file objections within the specified time may waive the right to

16   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17   Dated:  May 10, 2023

18

19                                                    KENDALL J. NEWMAN

20   dr1665.sj                                        UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28